# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SONYA NORMAN,<br><br>           Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>           Defendant. | Case No. 18 C 5746<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sonya Norman seeks judicial review of the Social Security Commissioner's decision denying her supplemental security income disability benefits. *See* 42 U.S.C. § 405(g). For the reasons stated herein, the Commissioner's decision is reversed, and the case is remanded for further proceedings in accordance with this Opinion and Order.

## I. BACKGROUND

Norman applied for supplemental income disability benefits in November 2014, alleging that she had been disabled since July 11, 2014, due to major depression, anxiety, panic attacks, crying spells, and post-traumatic stress disorder ("PTSD"). (Administrative Record (AR) at 17, 317,319, 320, 414, 491, Dkt. No. 8.) Norman was in an abusive relationship for approximately fourteen years. (AR at 59.) She was not permitted to work or leave

sight of her abuser—Norman's daughter's father. (AR at 59-61.) Norman eventually escaped from her abuser in 2012, and she lived in a car with her daughter for two years, until she received shelter from a homeless prevention service. (AR at 59-60, 72.) Norman feared for her life and continued to live in fear that her abuser would return. (AR at 61-63.)

On May 29, 2015, treating psychiatrist Viktoria Erhardt, M.D. stated that Norman had "mild limitations in the ability to make judgments on simple tasks, moderate limitations carrying out complex instructions, marked limitations in the ability to make judgements on complex decisions, extreme limitations responding appropriately to usual work situations and changes in a routine work setting, and extreme limitations interacting appropriately with the public, supervisors, and co-workers." (Pl.'s Br. at 2, Dkt. No. 10 (citing AR 362-63).) Dr. Erhardt diagnosed Norman with insomnia. (AR at 463.) On September 18, 2015, Advanced Practice Nurse Kathryn Peoples-Robinson stated that Norman had depressive disorder, educational and occupational problems, and problems in social environment. (AR at 418.) On March 15, 2017, Maryanne Morris, Norman's case manager, stated that Norman's conditions worsened because of her abuser finding ways to distress her. (AR at 509.) Moreover, Morris said Norman struggled with highs and lows of her condition, namely anxiety depression, and panic

attacks, and Norman suffered from excessive stress because of the domestic violence she experienced. (*Id.*) Finally, in January 2015, Norman had received a Global Assessment of Functioning ("GAF") score of 78, which decreased to 50 when she was evaluated again on August 13, 2015, and again to 46 on July 12, 2016. (AR at 21, 374, 537.) The GAF scale is used to rate how serious a mental illness may be. It measures how much a person's symptoms affect his or her day-to-day life on a scale of 0 to 100, the latter end of the scale constituting superior functioning.

Procedurally, the Social Security Administration ("SSA") denied Norman's application for supplemental disability benefits on September 3, 2015, and again on reconsideration on November 3, 2015. (AR at 17.) Norman filed a timely request for a hearing and appeared before Administrative Law Judge ("ALJ") Melissa M. Santiago, who denied Norman benefits on June 18, 2017. (AR at 25.) The ALJ found that Norman had not engaged in substantial gainful activity since November 17, 2014, the application date, and Norman had severe impairments, such as PTSD, depression, and anxiety. (AR at 19.) She also found that Norman retained the residual functional capacity ("RFC") to perform work at "all exertional levels," except she is limited to "simple and routine instructions and tasks; occasional interaction with the general public, coworkers, and supervisors; and no assembly work." (AR at 20.) The

ALJ found that Norman had no past relevant work and a limited education, (AR at 20), and concluded that there were a significant number of jobs that existed in the national economy that Norman could perform. (AR at 24.)

Norman filed a request for review with the Appeals Council, which was denied on June 18, 2018. (AR at 1.) Now Norman asks this Court to review and reverse the ALJ's determination. In support of her request for reversal, Norman argues that the ALJ: (1) did not properly evaluate Norman's RFC under Social Security Regulation 96-8P; and (2) erred in evaluating Norman's subjective allegations according to Social Security Regulation 16-3P. Each argument will be considered separately.

## II. **DISCUSSION**

To recover disability benefits under the SSA, a claimant must establish that she is disabled within the meaning of the SSA. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A person is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a five-step inquiry, analyzing:

"(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act. In reviewing this decision, the Court cannot engage in its own analysis of whether Norman is severely impaired as defined by the Social Security Regulation. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (internal quotation marks and citation omitted). The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (internal quotation marks and citation omitted).

In making its determination, the Court must "look to whether the ALJ built an accurate and logical bridge from the evidence to [her] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 505, 513 (7th Cir. 2009) (internal quotation marks and citation omitted). The ALJ need not, however, "provide a complete written evaluation of every piece of testimony and evidence." *Pepper*, 712 F.3d at 362 (internal quotation marks and citation omitted). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**A. Social Security Regulation 96-8P**

Norman first argues that the ALJ did not properly evaluate her RFC. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8P. "[T]he responsibility for the RFC assessment belongs with the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how [s]he has reached [her] conclusions." *Harper v. Berryhill*, No. 16 C 5075, 2017 WL 1208443, at *6 (N.D. Ill. Apr. 3, 2017) (quoting *Amey v.*

*Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

Norman contends that the ALJ did not properly evaluate her RFC for two reasons: (1) the ALJ's determination did not account for Norman's moderate limitations in concentration, persistence or pace; and (2) the ALJ's determination about Norman's social functioning limitations is not supported by substantial evidence. Each argument will be addressed in turn.

### *1. Concentration, Persistence, or Pace*

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 C(3). Generally, an ALJ cannot account for limitations in concentration, persistence, and pace by restricting a claimant to simple, routine, repetitive tasks. *See*, *e.g., Walters v. Astrue*, 444 F. App'x 913, 918 (7th Cir. 2010).

Here, Norman contends that the ALJ failed to account properly for her moderate limitations in concentration, persistence or pace. The Commissioner disagrees and asserts that the ALJ reasonably incorporated the opinions of Illinois State agency psychological consultants Dr. Thomas Low and Dr. Linda Lanier. Both consultants opined that notwithstanding Norman's moderate

limitations, she retained the ability to follow and recall simple directions, complete simple tasks, and adapt to the work environment. (AR at 83, 95.) As Norman points out, however, Dr. Low and Dr. Lanier also opined that she had a moderately limited ability to carry out detailed instructions and maintain attention and concentration for extended periods of time. (AR at 85, 97.) "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citation omitted); *see also* SSR 85-15, 1985 WL 56857 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.") Norman's ability to complete simple work does not establish her ability to complete such work for an extended period of time. A finding as much by the ALJ, without more, would be in err.

The Commissioner, however, relies on *Burmester v. Berryhill*, 920 F.3d 507 (7th Cir. 2019), and emphasizes that "an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination." *Burmester v. Berryhill*,

920 F.3d 507, 511 (7th Cir. 2019). But an ALJ's determination is not justified when the underlying opinion upon which she relies is made in error. *See Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004) (finding that an ALJ's decision cannot be upheld "when the reasoning process employed by the decision maker exhibits deep logical flaws, even if those flaws might be dissipated by a fuller and more exact engagement with the facts") (citations omitted). Moreover, as Norman correctly points out, *Burmester* is distinguishable. In that case, the court affirmed in part the ALJ's determination because the claimant's doctor opined "that [she] had the ability to understand, remember and carry out simple instructions subject to physical limitations, that maintaining concentration and attention should be manageable[,] and that she should be able to withstand routine work stress and adapt to typical job site changes." *Id.* The ALJ in that case did not err in determining that the claimant had the ability to understand, remember and carry out simple instructions because the treating doctor did not opine to limitations in this area. Here, however, it appears the ALJ adopted Dr. Low and Dr. Lanier's opinion of Norman's moderate limitations in concentration, persistence, or pace in the RFC determination for simple and routine tasks and instructions. But these doctors never opined that Norman could

conduct simple and routine tasks while maintaining concentration and attention.

Moreover, in *Burmester,* there "was no other finding in the report that [the claimant] was unable to concentrate on work," whereas here the administrative record provides ample findings of Norman's difficulty in concentration, persistence, or pace. Psychologist Joseph Valley stated that Norman's attention and concentration were impaired and that her attention, concentration, ability to shift mental operations, visual memory, short-term verbal memory, and long-term memory were poorly developed. (AR at 37, 40.) Treating therapist Kimberly A. Rogers asserted that Norman needed to "start increasing breaks to relax herself to manage her stress." (AR at 231.) The Commissioner points out, however, that the ALJ does not need to take into consideration Rogers' statement because a social worker is not an acceptable medical source. This may be true, but "principles of administrative law require the ALJ to articulate rationally the grounds for her decision" because a court's ability to review that decision is confined. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The ALJ must "build an accurate and logical bridge from the evidence to her conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Here, it appears to the Court that, given the evidence, the ALJ did not thoroughly consider Norman's moderate limitations in

concentration, persistence, or pace, as it applies to her ability to perform simple and routine tasks. That error was not harmless, as such consideration of limitations could easily have led the ALJ to reach a different conclusion. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (finding that an error is harmless only "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support"). Because the ALJ report does not provide much by way of rationalizing her consideration of Norman's limitations in concentration, persistence, or pace, the Court cannot uphold the ALJ's decision at step four—evaluating whether Norman can perform past relevant work.

### *2. Social Functioning Limitations*

Norman next argues that the ALJ's finding about her social functioning limitations was not supported by substantial evidence. Dr. Low and Dr. Lanier opined that Norman had mild to no limitations in social functioning. (AR at 83, 95). Despite their opinions, the ALJ found that "claimant's subjective complaints support additional limitations in social functioning." (AR at 23.) Thus, the ALJ's finding was more favorable to Norman than Dr. Low's and Dr. Lanier's opinions would suggest. Norman, however, contends

that the evidence supports a finding of even greater limitations. Whether this is the case is beside the point. "The question we consider on review is not whether an alternative finding may also be supported by substantial evidence. Rather, we ask whether the final agency finding . . . is supported by substantial evidence." *Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017). To reiterate, the ALJ evaluated the opinion of Dr. Low and Dr. Lanier and found that greater limitations were present given Norman's subjective complaints. These complaints include the various statements Norman cites in her brief — namely, the difficulty she experiences to leave her apartment. (*See* Pl.'s Reply to Def.'s Resp. at 5, Dkt. No. 23.) That suffices; the ALJ's determination on social functioning is supported by enough evidence. *See Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Even if reasonable minds could differ as to whether Norman has greater or fewer limitations in social functioning, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing the substantial decision. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). As such, Norman's argument on this basis fails.

### B. Social Security Regulation 16-3P

Norman also argues that the ALJ committed reversible error in evaluating her subjective statements regarding the limiting

effects of her impairments. The social security regulations describe a two-step process for evaluating a claimant's own description of her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2. If there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations . . . and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The Court reviews the ALJ's assessment of a claimant's subjective symptom allegations with "special deference and will overturn it only if it is patently wrong," *i.e.,* if it "lacks any explanation or support." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotation marks omitted); *Burmester,* 920 F.3d at 510. A reviewing court should rarely disturb a subjective symptom assessment, as it lacks "the opportunity to observe the claimant testifying." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th

Cir. 2006). The claimant bears the burden of showing that an ALJ's subjective symptom evaluation is "patently wrong." *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018).

Norman alleged that she was disabled due to her PTSD. The ALJ rejected this allegation based on Norman's "activities of daily living including her poor work history, the limited objective medical evidence, the conservative treatment of record, and the opinions of accepted medical sources." (AR at 24.) These bases are valid under the requirements of 20 C.F.R. § 416.929, which permit an ALJ to consider objective medical evidence, as well as other evidence including daily activities, prior work record, statements about symptoms, and evidence submitted by medical sources. 20 C.F.R. § 416.929(c). It appears that Norman does not contest the ALJ's reliance on objective medical evidence and Norman's poor work history. However, Norman argues that the ALJ should have specifically addressed her allegation of disabling fatigue—*i.e.,* that she spent all day in bed. *See Allensworth v. Colvin*, 814 F.3d 831, 834 (7th Cir. 2016) (ALJ erred in finding that fatigue did not limit claimant's ability to concentrate); *Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1046 (N.D. Ind. 2010) (ALJ erred in failing to analyze fatigue and the need to lie down during the day) (citations omitted). But it appears to the Court the ALJ here did account for such fatigue. The ALJ explicitly referenced the claimant's

testimony that she "sleeps most of the time," before reaching her ultimate conclusions. (AR at 21.) Such reference is enough to establish the ALJ considered Norman's fatigue in her determination.

However, Norman contends that the ALJ also failed to evaluate properly her statements about activities of daily living and whether those activities were consistent with the other evidence. The ALJ "cannot disregard a claimant's limitations in performing household activities." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Norman made a series of statements regarding her daily activities at home, none of which were mentioned in the ALJ's evaluation. These statements included: Norman watching her daughter through a window to ensure that her daughter safely got on and off the school bus (AR at 208); Norman staying in bed, crying, not bathing, and experiencing depression some days at home (AR at 208); Norman needing motivation and additional time to perform household chores (AR at 235); Norman needing several hours to prepare simple meals (AR at 235); Norman's inability to grocery shop (AR at 72); and so forth. Courts have repeatedly found fault "with decisions where an ALJ noted that the claimant could perform daily activities but failed to examine the physical or mental consequences of performing those activities and/or the claimant's need for assistance or modifications." *Greenfield v. Berryhill*,

No. 17-CV-328, 2018 WL 1603380, at *5 (N.D. Ind. Apr. 3, 2018). Here, the ALJ's determination does not even mention Norman's daily activities in the home, so it is unclear whether those activities were considered. And the ALJ was required to discuss whether Norman's statements about daily activities were consistent with her other statements and the medical evidence. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). As such, the ALJ here failed to evaluate properly Norman's statements about daily activity, as well as whether those statements were inconsistent with other evidence. Such failure demonstrates that the ALJ erred in reaching her determination, and that error was not harmless. *Spiva*, 628 F.3d at 353. Accordingly, the Court remands this case to the ALJ.

### III. CONCLUSION

For the reasons stated herein, the Court reverses and remands this case for further proceedings in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated: 6/19/2019